Warden. Good afternoon, your honors. It is my honor to introduce two law students from the University of Tennessee's Appellate Litigation Clinic who will be arguing the case today. Elizabeth C. Harwood and Evan Roethi. They've been working on the case all year and they will do a wonderful job. Thank you, your honors. All right. Thanks for your help. May it please the court. As Ms. Jewell said, my name is Elizabeth Harwood and I'm arguing on behalf of Mr. Stalling. I'll be splitting my time with my co-counsel, Evan Roethi, who will argue the public trial issue. Summary preclusion of cross-examination of the prosecution's star witness, the only witness connecting the defendant to the crime, is harmful. Johnson was the only thread tying Mr. Stalling to this case. Without Johnson, there can be no conviction because there is no evidence of a key element of the crime, the identity of the assailant. The key link that Johnson provides between Mr. Stalling and this crime was totally uncorroborated. No other witness and no other evidence provided or supported such a link. What about the jailhouse tape? Wasn't there a tape conversation in the jail? Mr. Stalling made a phone call from jail and in that phone call, what he's doing is contemplating the inability to be able to cross-examine this witness should something happen to him before trial. That's not evidence of his involvement in this crime. That's a little damning. Who has that conversation? Innocent people? Someone who is concerned about whether or not they will be able to cross-examine this witness at their trial. He's contemplating what could happen to the key witness in this case. That's why this witness is so important. Mr. Stalling recognizes that and is concerned about his ability to cross-examine this witness. This one statement made by Mr. Johnson is just one of upwards of five statements that he made that implicate Mr. Stalling in this crime. What about the reality that the testimony from the star witness actually ends up being inconsistent? In other words, he equivocates in trial. That seems helpful to your client, right? What we see at trial is Johnson skirting a line. He's under coercive pressure by the government to testify consistently with his preliminary examination testimony, to testify favorably. We see this in the pre-trial testimony that he gives, where Johnson is dragged into court by officers. He does not want to testify. The prosecutor states that she's threatened him and that she's going to lock him up. This is in the record. What we see in that pre-trial testimony is that he's also stated that he no longer wants to identify Mr. Stalling. What he's doing in his testimony is skirting this line between facing perjury charges for failing to point the finger at Mr. Stalling and his stated intention that he no longer wishes to do so. You concede that Stalling's lawyer did not commit ineffective assistance in not objecting when the judge cut this off? We don't concede that there was no ineffective assistance of counsel here. This is an important point. I think ineffective assistance was raised at the trial level. It was not raised as a cause and prejudice to get around the default here. That's why I would have said it seems like a concession that it wasn't ineffective assistance. At a minimum, it's not argued. I'm right about that. It's not argued in our brief. That's correct. We have to assume it was effective assistance of counsel not to object. How can that lead to a constitutional problem? There is no procedural default here without that objection. The state has not identified a procedural rule with which Mr. Stalling's counsel failed to comply. Mr. Stalling's counsel asked a question and the judge, sua sponte, precluded cross-examination on this issue, making an objection impracticable. That is caused... Isn't plain error review, isn't that a procedural bar? Haven't we said that? Even if the court treats this as a failure to state a due process objection, there is plain error here. The prejudice is apparent because this preclusion affected the verdict. We see that because the prosecution was able to offer evidence of bias. They were able to explain why Mr. Stalling, pardon me, why Isaac Johnson would testify more favorably to Mr. Stalling. They introduced evidence of threats by third parties. The defense was not able to do the same and offer its own evidence of bias toward the prosecution, which would go to explain why we see Mr. Johnson waffling. If the defense was able to provide an explanation for the jury as to why Johnson did not render testimony that was more favorable to Mr. Stalling, then the jury would have the constitutionally sufficient information to judge both sides of Johnson's testimony. And that was absent here. And the failure to object to that was made impracticable by the court, just sua sponte precluding. But didn't they, they went up to the bench at the, he called the parties up to the bench. And we have no record, do we, of what transpired up there? That's correct. And, but what would have precluded him from at the conclusion of the bench conference saying I want to put my objection on the record to not being able to proceed? Yes, your honor. Michigan rule of evidence 103A2 provides that you don't need to make an offer of proof if it's apparent from the context. And the context here is, it starts in the record at page ID 378, which is that pretrial testimony. And the prosecutor telling the judge that she's had to send police officers out to bring Isaac Johnson into court and was threatened to lock him up. That Johnson states in front of the judge outside the presence of the jury that he does not want to testify and no longer wishes to point the finger at Mr. Stalling. There, it's on the record that the prosecutor is having several private conversations with the officer. So this is the context. But what prevented the attorney from just standing up and saying, your honor, I'd like to object under the confrontation clause. I should be permitted to go through this line of questioning. All he had to do was mouth those words, right? The court made that impracticable here by sua sponte precluding this line of questioning. But the court didn't say, if you say another word, I'm going to hold you in contempt, or I'm not going to let you say anything else. I mean, there's nothing in the record where the judge affirmatively said, I'm not letting you make any objections, right? I see my time is up. May I respond? Yes. That is not in the record, the judge saying those words. But when we think about the environment and the pre-trial testimony that provides the context, that makes the objection unnecessary. Thank you. Mr. Raffi? Yes, your honor. May it please the court. I'll be addressing the violation of Mr. Stalling's public trial right, as well as touching on procedural default. This court emphasized in Drummond v. Houck that Waller v. Georgia stated a general rule that applies to any type of closure. The trial court must balance the interests for and against closure. The Supreme Court noted in Presley v. Georgia that if a closure is predicated on generic any specific threat, a closure such as that violates a defendant's right to a public trial as a matter of course. Isn't there a procedural default issue here as well? Yes, your honor. Trial counsel did not contemporaneously object to the closure. However, this court's adjudication of the merits of this claim is not barred by a procedural default. If any of the four factors of procedural default are unmet, that bar recedes from this court's adjudication of the merits. Here, there was clear cause and prejudice preventing counsel from objecting and there was harm ensuing from that failure to object, as well as the analysis of the last reviewing state court did not rest on an adequate and independent state ground. Turning first to cause and prejudice, here we have interference by the judge. There is no motion by the prosecution for closure of the courtroom. This is a sua sponte closure. The clerk did announce that there would be no movement in the courtroom during these it was immediately prior to opening statement. What did stalling's attorney do at that point? Obviously he noticed the judge doing this. Your honor, at this point it is on the record at page 719 that trial counsel was unaware that the courtroom was in fact being locked during opening and closing statements. And so. It's unlocked as opposed to being closed? Is that what you're getting at? Your honor, the locking of the door was the closure that occurred. It was not an instruction for those in the courtroom. So how would he have not known if the judge said it? Your honor, the circumstances in which the closure occurred, again, is unusual. Waller indicates that there should be a motion. There should be findings of fact that predicate a closure. Instead we have an instantaneous decision by the judge to lock the courtroom immediately prior to opening statements and again during closing arguments. Trial counsel did not have the ability or the benefit of that clearly established federal law to understand that a closure was indeed occurring at that point. So it was ineffective assistance? Is that the cause and prejudice? Your honor, we would argue that primarily the cause was a interference by the judge. The aggressive decision by the judge to close the courtroom without a motion. Your honor, I would also contend that if trial counsel was aware that the closure was occurring, that would render ineffective assistance. But again, from the record, we do know that trial counsel was unaware that the court was being locked because of the sua sponte nature of the closure. Did he not realize during closing argument that, I mean, it was going to be the same as it was during the openings? Your honor, again, the record reflects that trial counsel was unaware both during opening and closing statements that a locking, that a closure had fully occurred. She testifies during the ineffective assistance counsel hearing at the state level that she believed that it was just instruction to those in the courtroom not to move during the course of argument. She was unaware that a closure had occurred at that point. And turning to harm, while this would be a structural error, this circuit is held in Ambrose v. Booker that actual prejudice must be shown in the case of a procedural default. And again, here we have error, or excuse me, prejudice ensuing from this closure. Springport has reiterated that the policy behind a public trial right is to ensure that both the judge and the prosecutor carry out their responsibilities in an appropriate manner to ensure that the antiseptic eye of the public is on the proceedings as they are occurring. Almost all the cases though, they don't involve the courtroom already being filled with people and those people being allowed to stay, whether they be press or whoever they may be. This case is quite a bit different factually than most of the cases you rely on. Your Honor, there are some factual differences. However, this is somewhat analogous to Presley v. Georgia. In that circumstance, a single individual that was observing the proceedings during Vordeer was removed from the courtroom. However, during that proceeding, there were also 42 potential jurors that were present. It is notable that the Supreme Court did not note that the presence of those jurors that would not eventually be selected would have a curative effect. And so under this circuit's total versus partial closure precedent or distinction, it is not recognized that the Supreme Court, that would have constituted both a total and a partial closure. But the jurors in that case at that time, they're part of the proceedings, the potential jurors. They're not just the public at large at that time. Well, Your Honor, even though there are subtle differences, and I would contend that that still falls under the circuit's partial closure jurisprudence, that this Court has repeatedly held in Hereford v. Warren that it is not just the factual analog cases from the Supreme Court that apply to habeas review. It's also the legal standards and principles that flow from that to analogous circumstances. And again, Waller v. Georgia, as this Court has held in Drummond v. Houck, does state a general rule that applies to even partial closures. As I see I'm out of time, may I finish my thought? You can finish your thought, yes. It applies even to partial closures. And this is an error which was harmful, and we request relief. Okay, thank you. We'll hear from Mr. Shimkus. Good afternoon, Your Honors, and may it please the Court. Assisting Attorney General Scott Shimkus appearing on behalf of Respondent Warden Sherry Burt. Petitioner Stalling is not entitled to federal habeas relief in this case for two specific reasons. First, because the confrontation claim was harmless, given that regardless of any alleged advisement of perjury charges from the prosecutor, the victim did not testify consistently with his preliminary examination testimony. No, it is true. It is inconsistency, you could say, or not quite consistency. You could say what's the prejudice, but it's still pretty damning, right? He's still saying it's him or the brother, right? That's not great. Certainly, he didn't go all the way to the other end of the spectrum. Yeah, so why isn't it still pretty, you know, darn prejudicial? It's harmless, Your Honor, because there were other facts in the case that implicated Mr. Stalling as the shooter and not his brother. We have the, obviously, the preliminary examination testimony from the victim. We have the corroboration of that in his police statement. We have the fact that the defendant ran to a burgundy car after the shooting. Defendant was in a burgundy car when he later threatened the victim. The defendant fled from the police when he was going to be arrested. Before the preliminary examination, the defendant told the victim himself, the defending himself told the victim, he won't make it to testify. That appears on page ID 429. The victim was also offered $3,000 not to testify again before the preliminary examination by Defendant Stalling's family or his friend. And furthermore, as Your Honor pointed out, there's the defendant's jail call where he's talking about waiving his preliminary examination, not because he's afraid of not being able to cross-examine the victim, but because he wants to prevent the victim from having any testimony on the record that they can later use at a trial, should he not appear because he was threatened, bribed, or assaulted as he was after the preliminary examination. That appears, the assault and the near abduction, the striking on the head of the victim, that appears on page ID 432. Wasn't there an eyewitness or a neighbor who described somebody who wasn't like Mr. Stalling? Yes, that testimony did appear, and in fact, Mr. Stalling presented an alibi as well. The jury had plenty of information on both sides of the spectrum here, and they believed, as I pointed out in my brief, it was. But that's not good for you if there's plenty of evidence on. I mean, it has to be harmless beyond a reasonable doubt, right? And it certainly was. The fact that there exists evidence on both sides of the berm here doesn't impact or it doesn't mitigate the harmless error analysis here, because there was plenty of evidence to show that this was Stalling and not his brother. The jury just didn't believe Stalling's defense, essentially. They didn't believe his alibi. They didn't believe this neighbor, or maybe they thought the neighbor was mistaking his description. I think what they believed is that the victim was truthful in his preliminary examination testimony when he had only been threatened and bribed. But if that's right, then why shouldn't the defendant have been allowed to impeach the guy or explore any biases or any threats of perjury, whatever it is? I mean, if the case turns on a razor's edge, then that's key evidence, isn't it, or a key line of questioning? Right. And I wouldn't say it turned on a razor's edge here. And it's also not our contention that the stopping of defense counsel from asking the perjury question was correct. The state court already determined that that was, in fact, an error, but that it was harmless. So we're not saying that the attorney shouldn't have been allowed to ask that question. We're just saying the preclusion of a single question from a 50-page cross-examination where the defense attorney was otherwise allowed to fully cross-examine the victim. Well, it's a line of questioning, isn't it? I mean, it stops, right? We don't know what the attorney, what other questions were going to come from that single question, right? I mean, you don't... I suppose that's true, but at least based on the record that we have, it appears that it was going to be that question. Because it was along the lines of the rest of the questioning of why the victim was reluctant to testify. And then that was going to be just another piece of that puzzle. But otherwise, the defense attorney was able to ask everything else he wanted. He got the victim to say, the defense attorney asked the specific question, can you tell this jury to a certainty that it was Mr. Stalling that did this to you? The victim answered unequivocally, no. The defense attorney was able to get the victim to say that he identified the defendant at first because he was angry. And the victim also said that the victim, or excuse me, the defendant and his brother looked like twins. This was a very effective cross-examination. This was only a single question that was precluded from a very lengthy and thorough cross-examination. Therefore, this error was harmless. And turning next to the courtroom closure issue, that claim is procedurally defaulted, as this court is pointing out. Are you not arguing the first claim is procedurally defaulted? It certainly was, Your Honor. But we recognize that there's a prejudice analysis involved in that. And we would contend that prejudice analysis for why this was harmless will also apply to why there can't be prejudice for procedural default. So that the error was harmless. So there certainly was a procedural default in the first issue. It just seems that as the district court did, they went right to the merits of the issue. That's what we did as well. But with the second issue, we do believe this procedural default is even stronger than the first issue. Because in the second issue with the courtroom closure, as Your Honor is pointing out, defense counsel certainly could have objected here. The appellant has made the argument that, well, the attorney wasn't aware that the court was going to lock the doors. But the record belies that claim. On page ID 398, the trial court says specifically before the opening statement, the courtroom is going to be locked because of the configuration of the jury box. The defense attorney was sitting right there, heard the court say that, and did not object. Same thing before the closing arguments. The court said, we're going to go ahead and lock the door so the parties can deliver their closing statements. Again, the attorney did not object. And because the attorney did not object, we must engage in effective assistance analysis here. And whether it was deficient performance or not to object, the fact of the matter is Mr. Stalling cannot prove prejudice. He cannot demonstrate prejudice from the closure of the courtroom for a total of less than 74 minutes over the course of a two-day trial. And as Judge Guy pointed out, there were other people in the courtroom. The court pointed out each time the court addressed the room as ladies and gentlemen, presumably talking to more people than just the attorneys, the defendant, etc. So we know there were people in the room. How many people do this, lock the doors during openings and closings? Never heard of it. That information, I apologize, Your Honor, I don't have on me. You ever heard of it before? I know Mr. Stalling in his brief to this court pointed out one other case where this judge has done that. But I will also note that in that case, the district court decided the same as it did here that that was not an error. And is the idea safety or is the idea interruption during the closings and openings? As the court put on the record in this case, Your Honor, it's that they, from what I understand, the configuration of the courtroom is such that the jury box faces the doors and so the court wants to prevent distraction to the jury during the opening and closing statements. And so they, it would appear, they locked the door during openings and closings. Well, the question isn't so much whether rather peculiar actions on the part of the judge. The question is what were the consequences of it? Because you can make an argument that the reasoning behind it, the jury is going to be looking at those same doors. And if anything, you'd want them to be, if they're going to be distracted on anything, it'd be better to have the opening and closing statements because they're told the statements of lawyers aren't evidence anyway. So what you want the jury to focus on is evidence. But again, the inconsistency in the judges proceeding in that way really isn't the issue. I'm sorry, I missed the last part. I say that really isn't the issue in the case so that it makes no sense, one versus the other. Well, and to the extent that the court needed any reasoning here given that this was a partial closure case to which no clearly established federal law applies to, even if the court did need a reason, the distraction of the jurors was a substantial one. Again, as I point out with Mr. Stalling's note of Judge Berry's doing this before in that district court case, the district court determined that it was a substantial reason to not allow the jurors to distract. But there's nothing in Waller or Presley that even suggests the Supreme Court would agree with that, right? I mean, they're talking about closing the courtroom because there's sealed documents or wiretaps or that kind of thing. Just preventing a distraction seems not even close to that, doesn't it? That, under the Waller factors, that might be true where you need more, you need several reasons or additional reasons or much more substantial reasons. But there's a lesser standard, it appears, to the extent that the circuit courts, the federal circuit courts have come up with a lesser standard for a partial closure that it just need be a substantial reason. And there's reason to believe here that the distraction of potential, or not the potential jurors, excuse me, the actual jurors. But you couldn't get away with this in a high-publicity case, could you? Closing is an opening, so it's like the most important part of the case from perspective of journalists and the public wanting to see what's happening. I'm not sure that it would be the most important part, or whether it would matter, whether it was a high-publicity case or not. I'm not sure the jurisprudence makes that distinction per se. See, this would not be an abuse of discretion in a substantial public interest case to close the doors because of the risk of distraction given the configuration of the court? It might be, Your Honor, on direct review. But because this is collateral review, a different set of standards apply. Because we have ADPA to contend with in this case, as the court pointed out in Drummond, the difference being that this is a collateral matter, not on direct appeal. So for... If it's not a procedural default, wouldn't it be de novo review? If there is no procedural default, yes, that would be the case. But there is, in fact, a procedural default here. Defense counsel had every opportunity to object to the closing of the courtroom, both before openings... Why would it be de novo review? Wasn't there an adjudication on the merits of the trial of the... There was. There was from the Michigan Court of Appeals, Your Honor. But the way the opinions came down in this case, it's somewhat of a strange procedural posture because the lead opinion found that there was no error. But even if there was, it was harmless. Whereas the concurring opinions determined that there was, in fact, an error, but because plain error review applied, they agreed with the lead opinion that any error in the closing of the courtroom doors was harmless. So really, the majority opinion here is, I think we have to agree that the majority opinion is that there was an error, but that it was harmless under plain error review. And the reason that plain error review even applied in the first place is because this was a procedural default. The defense attorney did not object. Plain error review is an adjudication on the merits for purposes of 2254D, right? An alternative determination on the merits, even in the face of plain error review, is, Your Honor, yes. That was essentially established in Fleming versus Smetrych and then reaffirmed, I believe, just a year or two ago in Stewart versus Treywheeler. That... Does it depend on what the plain error theory is for the state court ruling? In other words, if they rely on the fourth prong of plain error, that counts as a ruling on the underlying constitutional violation? I'm not sure that the cases make a distinction as far as which prong it would be under. I guess my contention would be that it doesn't matter which prong it is or the reason for the procedural default, whether it's, you know, that there was error, but it wasn't plain, or that the, you know, the rest of the evidence made the error harmless, or on the fourth prong, as Your Honor pointed out, which is what happened in this case, that it didn't affect the sort of the justice of the proceedings, if you will. So it didn't apply there. Excuse me. And this is a structural error, right, if it's an error? There's no prejudice that would have to be proven? Normally, that would be correct, Your Honor. Courtroom closures are structural errors, but when they are procedurally defaulted, this court still must engage in a prejudice analysis. We know that from Ambrose v. Booker. Excuse me. And that was recently reaffirmed at the Supreme Court level in Weaver v. Massachusetts. That's 137 Supreme Court, 1899. So the cause and prejudice part of the analysis, the prejudice still has to go to whether he's essentially not guilty of the crime. Correct, Your Honor. Whether it's a structural error or not. Exactly, regardless of whether it's a structural error. Even in the face of a structural error, if a claim is procedurally defaulted as it is in this case, the petitioner must still prove prejudice. And he has not and cannot do that in this case. He has not shown any reason to believe there was actual prejudice stemming from the closing of the courtroom doors. Seeing as my time is diminishing here, Your Honor, I'm more than happy to answer other questions. Otherwise, I will ask this court to affirm. Thank you very much. All right. We'll hear from Mr. Stallings. One thing that's clear is if there is an error, it can't be cured if the Court of Appeals doors are left open during the argument. So don't worry about that. We're not going to rule on that ground. Your Honor, given that I'm limited in time, I'd like to focus particularly on the harmfulness of the Confrontation Clause violation during the rebuttal. First, the State has asserted that this was a harmless error. However, looking to the Van Arstal factors, it's clear that this was in fact a harmful violation. First, this was the star prosecution witness. There is no other evidence that ties Mr. Stallings to the scene of the shooting. Second, this testimony was not cumulative. This was core to the prosecution. But he did point out other evidence that links the defendant to the crime. Your Honor, it does not link Mr. Stallings to the crime. The State referenced the jail call, alleged threats by colleagues of Mr. Stallings, and an offer of money from the family of Mr. Stallings. Color of the car. Yes. There's a mention of a color of a car, which is inconsistent between the different testimony. All of these do not corroborate that Mr. Stallings was in fact the shooter on that evening. They show an attempt to perhaps encourage him to testify truthfully. Now, the State said that there's a police identification. However, there are two prior police statements that Mr. Johnson made on page 846 and 848, the night of the shooting and the day after, where Mr. Johnson testifies that he has no idea who robbed him. Again, he recants that he was robbed that evening. The second night, he said it was an unknown black male. It is only to the third, fourth, and preliminary hearing that Mr. Johnson decides to identify Mr. Stallings as the shooter that evening. There's no corroboration. There's no physical evidence. There's no gun that puts Mr. Stallings there on the evening. In fact, there's contradictory evidence. Again, as this Court pointed out, Mr. May, a witness at the scene of the crime, testifies that it was a larger male, almost twice the weight of Mr. Stallings. We have Ms. Allen testifying that he was on a whole other part of the city when the shooting supposedly occurred. None of this evidence goes to corroborate Mr. Stallings as the shooter. In fact, all of it goes to contradict that he was the shooter. And while there was other cross-examination. What was the cross-examination going to be? I mean, you were told that you better testify truthfully by the prosecutor. I mean, he had equivocated at trial. He had been warned at some point about perjury by the judge, right? So what would have been the difference maker with this line of questioning? Yes, Your Honor. The harm is not only in the fact that Mr. Johnson equivocates in his testimony. The harm is that the jury was deprived of key biased testimony. Every review in court prior to this has identified that this was an error. As a result, the jury was forced to determine the weight, the credibility of Mr. Johnson's testimony. Only with the prosecution's explanation for that equivocation. They were not given the opportunity to adjudicate that he was threatened by the judge, by the prosecutor prior to testifying. In Blackston, this court emphasized that the determination of witness credibility is core in the jury's responsibility. That was denied to Mr. Stallings and we ask for habeas relief. Thank you. All right. Thanks to all three of you. We appreciate the arguments. The case will be submitted and thank you for your representation, Mr. Stalling. Very impressive. I assume this is your first argument in a court with or without closed doors. And don't you have exams immediately following? Yes. Well, congratulations. Great job and we look forward to your entering the bar before long. So thank you. The case will be submitted and the clerk may call the next case.